# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of 06/10/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** Revo Law Firm, P.C. v. Allan L. Knighten, et al.

**Case Number:** 04-01146

### Document Information

**Description:** Memorandum Opinion re: [11-1] Motion For Summary Judgment, Statement of Undisputed Facts, and Memorandum of Law by Revo Law Firm, P.C. .

**Received on:** 2005-04-06 11:04:06.000

**Date Filed:** 2005-04-06 00:00:00.000

**Date Entered On Docket:** 2005-04-07 00:00:00.000

### Filer Information

**Submitted By:** James Burke

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
ALLAN L. KNIGHTEN and
PATRICIA M. KNIGHTEN,
    Debtors.                                        No. 7-04-12813 SA

REVO LAW FIRM, P.C.,
    Plaintiff,
    v.                                         Adv. No. 04-1146 S

ALLAN L. KNIGHTEN, et al.,
    Defendants.

## MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross motions for summary judgment[1]. Plaintiffs appear through their attorney The Law Office of George "Dave" Giddens, PC (Dave Giddens). Defendants appear through their attorney the Law Office of Gerald R. Velarde (Gerald Velarde). This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

Federal Rule of Civil Procedure 56(c) provides, in part, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[1] Defendants' Motion for Summary Judgment (doc. 8) and Request for Attorney Fees (doc. 9) and Memorandum in Support (doc. 10), Plaintiffs' Response (doc. 14) and Defendants' Reply (doc. 16); Plaintiff's Motion for Summary Judgment and Memorandum in Support (doc. 11), Defendants' Response (doc. 13) and Plaintiffs' Reply (doc. 15).

that the moving party is entitled to a judgment as a matter of law." Therefore, if the Court finds that a material fact is in dispute, summary judgment should be denied. The Court's task at summary judgment is not to assess the credibility of conflicting testimony. Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1557 (10th Cir. 1995)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.")). Finally, the Court examines the factual record and reasonable inferences therefrom in the light of the nonmovant. Thomas v. International Business Machines, 48 F.3d 478, 484 (10th Cir. 1995); Cole v. Ruidoso Municipal Schools, 43 F.3d 1373, 1377 (10th Cir. 1994).

Whether a fact is material is determined by the substantive law governing the case. Anderson, 477 U.S. at 248. Therefore, the Court will briefly review the causes of action asserted to establish the framework for materiality. The Complaint (doc. 1) seeks a determination that Plaintiffs' debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) or (4). Those sections provide:

>     (a) A discharge under section 727 ... of this title
>     does not discharge an individual debtor from any
>     debt--
>     ...
>     (2) for money, property, services, or an extension,
>     renewal, or refinancing of credit, to the extent
>     obtained by--
>         (A) false pretenses, a false representation, or
>         actual fraud, other than a statement respecting
>         the debtor's or an insider's financial
>         condition;
>     ...
>     [or]
>     (4) for fraud or defalcation while acting in a
>     fiduciary capacity, embezzlement, or larceny.

To succeed on a Section 523(a)(2)(A) claim, the creditor must prove 1) the debtor made a false representation, 2) the debtor made the representation with the intent to deceive the creditor, and 3) the creditor relied on the representation. Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1373 (10th Cir. 1996). The creditor's reliance must have been justifiable. Field v. Mans, 516 U.S. 59, 77 (1995). Finally, the debtor's representation must have caused the creditor to sustain the loss. Young, 91 F.3d at 1373. At trial, any doubts must be resolved in the debtor's favor[2]. Chevy Chase Bank FSB v. Kukuk (In re Kukuk), 225 B.R. 778, 782 (10th Cir. BAP 1998).

---

[2] In these motions for summary judgment, however, the Court does not resolve doubts – its only function is to determine if there are disputed material facts.

Page -3-

To succeed on a Section 523(a)(4) claim, the creditor must prove one of three things: (1) fraud or defalcation while acting as a fiduciary; (2) embezzlement; or (3) larceny. No fiduciary relationship is necessary for embezzlement or larceny. <u>Great American Ins. Co. v. Graziano (In re Graziano)</u>, 35 B.R. 589, 593-94 (Bankr. E.D. N.Y. 1983).

To succeed on a Section 523(a)(4) fiduciary duty claim, the creditor must prove (1) the existence of a fiduciary relationship between the debtor and the objecting creditor, and (2) a defalcation committed by the debtor in the course of that relationship. <u>Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)</u>, 216 B.R. 283, 286 (10th Cir. BAP 1997).

To succeed on a Section 523(a)(4) embezzlement claim a creditor must prove (1) entrustment to the debtor, of (2) property, (3) of another, (4) which the debtor appropriates for his or her own use, (5) with intent to defraud. <u>Adamo v. Scheller (In re Scheller)</u>, 265 B.R. 39, 53 (Bankr. S.D. N.Y. 2001). See also <u>Driggs v. Black (In re Black)</u>, 787 F.2d 503, 507 (10th Cir. 1986):

> "Embezzlement, for purposes of 11 U.S.C. § 523 'is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come, and it requires fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud.' " <u>United States Life Title Insurance Co. v. Dohm (In re Dohm)</u>, 19 B.R. 134, 138

Page -4-

(Bankr. N.D. Ill.1982) (quoting American Family Insurance Group v. Gumieny (In re Gumieny), 8 B.R. 602, 605 (Bankr. E.D. Wis.1981)). Embezzlement requires that the original receipt or taking of the property be legal. Scheller, 265 B.R. at 54. The property taken must also be another's, because one cannot embezzle one's own property. Id.

To succeed on a Section 523(a)(4) larceny claim a creditor must prove (1) the wrongful taking, of (2) property, (3) of another, (4) without the owner's consent, and (5) with the intent to convert the property. Id. at 53. See also United States v. Smith, 156 F.3d 1046, 1056 (10th Cir. 1998), cert. denied, 525 U.S. 1090 (1999)(citing Black's Law Dictionary 1477 (6th ed. 1990) defining "larceny" as the "[f]elonious stealing, taking and carrying, leading, riding, or driving away with another's personal property, with intent to convert it or to deprive owner thereof.") Larceny requires that the original taking of the property be unlawful[3]. Scheller, 265 B.R. at 54. The property taken must also be another's, because one cannot convert one's own property. Id.

**FACTS**

---

[3] Larceny differs from embezzlement only with respect to the manner in which the property comes into possession of the wrongdoer. Scheller, 265 B.R. at 54.

Based on the answers to the complaint and the parties' statements of facts that were admitted or deemed admitted in the summary judgment motions, the Court finds as follows:

1.  On or about May 1, 1991, Mr. Knighten ("Defendant")[4], who is an attorney, became an employee of the Revo Law Firm, PC and/or M. Terence Revo (collectively "Revo" or "Plaintiffs").

2.  On or about February 1, 1993, Margaret Bryant engaged Revo to represent her in a personal injury action. Ms. Bryant is Defendant's sister.

3.  The Revo firm did some work on the Bryant claim and received a contingency fee for partial settlement of the case. Later, Defendant and the Revo staff did a small amount of work on the remaining larger claims.

4.  On or about December 1, 1995, Defendant's employment with Revo was terminated.

5.  Thereafter, Revo and Defendant agreed on which cases Defendant would take with him and continue representation on, and how settlements, costs and fees would be divided between them. There were different agreements for each

---

[4] Ms. Knighten appears as a defendant because the state court ruled, as described below, that the debt that is the subject of this adversary proceeding was a community debt. Any specific reference to her will be as "Ms. Knighten."

Case 04-01146-s    Doc 19    Filed 04/06/05    Entered 04/07/05 11:17:00 Page 7 of 19

case, and none were reduced to writing. One case taken was the Bryant matter. The parties' agreement regarding the Bryant matter was that Revo was releasing the file to Defendant and Revo would receive 40% of any contingency fee if the case settled immediately, but if it did not settle immediately, then the parties would divide the fee in a method that was fair in accordance with the work performed.

6. Thereafter, Revo and Defendant remained in contact regarding the cases.

7. Defendant took other cases with him and the parties divided the fees in accordance with their agreements.

8. It took two years of extensive work solely performed by Defendant before he was able to settle the Bryant case for what he and the client thought was fair.

9. On or about January 16, 1998, the Bryant matter settled and Defendant deposited $122,595 into his attorney trust account.

10. On or about February 2, 1998, Defendant withdrew $91,487.49 from the trust account representing the contingency fee for the Bryant matter. He set aside no money to pay Revo.

11. On or about May 1, 1999, Defendant advised Revo of the Bryant settlement. They later met and Defendant provided documentation regarding the settlement. Defendant offered Revo $8,666.66, the amount he thought was fair according to their agreement.

12. Revo refused the offer and demanded $36,595, which is 40% of the fee.

13. The parties subsequently never agreed on a fair amount.

14. Revo filed a complaint for Debt and Money Due and Conversion in the New Mexico state courts on February 5, 2001.

15. On March 10, 2004, the state court awarded Revo judgment against Defendant and Ms. Knighten in the amount of $14,444.44 plus costs, pre- and post-judgment interest. The state court disagreed that Revo was entitled to 40% of the fee; it found that the agreement had been "whatever was fair." The state court made no findings on conversion.

16. Defendant and Ms. Knighten filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 16, 2004.

17. Revo timely filed this adversary proceeding.

**THE SUMMARY JUDGMENT MOTIONS**

Briefly, Plaintiffs' motion argues that the established facts indicate that Defendant never had an intent to repay. Specifically, he never set aside funds from the settlement, he informed Revo of the settlement only much later, and at the state court trial he testified that he believed Revo deserved to be paid $0 to $5,000. Plaintiffs also argue that all circumstantial evidence also shows the lack of intent to repay.

Next, Plaintiffs argue that Defendant was a fiduciary because he agreed to pay Revo when the case was settled. They also argue that the New Mexico Rules of Professional Conduct for lawyers conclusively establish the requisite trust. As to embezzlement and larceny, Plaintiffs basically say the facts speak for themselves.

Defendants' motion urges that, under the doctrine of collateral estoppel, there was no finding of fraud or conversion so the adversary should be dismissed. Specifically, they also argue that there is no evidence in the record that there were any misrepresentations at the time the statements were made, and no evidence of an intent to defraud. Defendants also argue that a misrepresentation claim cannot be based on future events. As to embezzlement, they urge that there is no evidence of fraudulent intent. And, as to

Page -9-

larceny, they claim that because the state court awarded a lesser amount to Revo than it claimed, there is a question as to what property of another is involved.

Both motions raise the issue of attorney fees under 11 U.S.C. § 523(d). That section states:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

"Consumer debt" is defined at 11 U.S.C. § 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose." The Court finds that the debt involved in this case is not a consumer debt and therefore section 523(d) does not apply. Summary judgment will be granted to Plaintiffs on this issue.

**CONCLUSIONS OF LAW**

1. **Collateral Estoppel.**

In general, collateral estoppel does not apply to the issues currently before the Court. See Archer v. Warner, 538 U.S. 314, 320-21 (2003)(a claim reduced to judgment before bankruptcy does not bar inquiry into the true nature of the

debt)(quoting Brown v. Felsen, 442 U.S. 127, 138 (1979)).  No
issues of dischargeability were raised in the state court (nor
could they have been years before the bankruptcy).  The state
court's judgment contained no findings, it only awarded
judgment and declared that the debt was a community debt.
While the amount of the debt and the community liability of
Ms. Knighten were conclusively established, those are not
issues today.

2.   **The 523(a)(2)(A) claim.**

First, Defendants are not entirely correct that a
misrepresentation claim cannot be based on future events.  A
statement about the future can misrepresent an existing fact.
For example, if Mr. Knighten stated he would pay in the future
but, at the time, knew he would not, this would be actionable.
See Kukuk, 225 B.R. at 784 (quoting Restatement (Second) of
Torts (1976) § 525 cmts. e, f).  See also Fleming v. Sagan,
218 B.R. 494, 500 (Bankr. W.D. Mo. 1998)(Attorney creditor
proved that attorney debtor never intended to honor fee split
agreement.)

The intent at the time of the agreement is the issue in
this case.  The Court finds that none of the established facts
show Defendant's intent at the time the oral agreement was
made.  Plaintiffs proved that Defendant did not set aside

funds, that he did not timely inform Revo of the settlement, and that he testified at trial he believed Revo only deserved $0 to $5,000. All these events occurred long after the date of the representations. They do not prove that Defendant did not intend to pay when he entered the contract. In fact, Plaintiffs recognize this possibility. See Plaintiffs' Response to Defendants' Motion for Summary Judgment, doc 14 at p. 5 ("After the agreement, Knighten later unilaterally changed his mind about the agreement without informing [Revo]"). While the above facts may be relevant to determining Defendant's earlier intent, they are not conclusive. Therefore the Court cannot find that there was a misrepresentation, or that there was an intent to deceive. The Court needs a trial on this issue.

3. **The 523(a)(4) fiduciary duty claim.**

The existence of a fiduciary duty for section 523(a)(4) is a question of federal law, not a "fact" that can be pled. Van de Water v. Van de Water (In re Van de Water), 180 B.R. 283, 289 (Bankr. D. N.M. 1995)(Fiduciary capacity is a question of federal law; the general definition of fiduciary is too broad in the dischargeability context.); Fowler Bros. v. Young (In re Young), 91 F.3d 1367, 1371 (10th Cir. 1996) ("The existence of a fiduciary relationship under § 523(a)(4)

is determined under federal law.") In <u>Employers Workers' Compensation Assoc. v. Kelley (In re Kelley)</u>, 215 B.R. 468, 471-72 (10th Cir. BAP 1997), the Tenth Circuit Bankruptcy Appellate Panel discussed fiduciary duty:

> Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." The Tenth Circuit recently explained the meaning of "fiduciary capacity" in this provision.
>> The existence of a fiduciary relationship under § 523(a)(4) is determined under federal law. However, state law is relevant to this inquiry. Under this circuit's federal bankruptcy case law, to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor. Thus, an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4). Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between the parties' knowledge or bargaining power, is sufficient to establish a fiduciary relationship for purposes of dischargeability. "Further, the fiduciary relationship must be shown to exist prior to the creation of the debt in controversy." [<u>Allen v. Romero (In re Romero)</u>], 535 F.2d [618,] 621 [(10th Cir. 1976)].
>
> <u>Fowler Bros. v. Young (In re Young)</u>, 91 F.3d 1367, 1371-72 (10th Cir. 1996)(additional citations omitted). We are, of course, obliged to apply this narrow view of the fiduciaries who are covered by § 523(a)(4).

The <u>Kelley</u> court also noted that state statutes often, but not always, impose trusts on persons held to be fiduciaries as a matter of law based on their relationships. <u>Id.</u> at 473. <u>See also</u> <u>Van de Water</u>, 180 B.R. at 289 ("The trust requirement is

Page -13-

not limited to trusts arising out of a formal agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.")(Citation omitted.) A state statute must meet three requirements to trigger section 523(a)(4)'s fiduciary status: (1) the trust res must be defined by the statute, (2) the statute must spell out the fiduciary duty, and (3) the statute must impose a trust on funds prior to the act creating the debt. <u>Kelley</u>, 215 B.R. at 473.[5]

The Court finds that there was no fiduciary duty sufficient to satisfy Section 523(a)(4) in this case. Defendant may have owed some general duties to Revo of confidence, trust, loyalty or good faith, but that is not enough. First, no express trust was created.

Second, Revo did not "entrust" the $14,444.44 to the Defendant. This amount is only what the state court found Defendant owed to Revo after lengthy litigation, in determining a fair division of the fees. See <u>Fowler Bros.</u>, 91 F.3d at 1371 ("Under this circuit's federal bankruptcy case

---

[5] <u>See also</u> <u>Davis v. Aetna Acceptance Co.</u>, 293 U.S. 328, 333 (1934): "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto."

law, to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor.")

Third, the "trust" imposed by the New Mexico Rule of Professional Conduct does not meet the Kelley three-part test for Section 523(a)(4)[6]. Rule 16-115(C), NMRA states:

> **Severance of interest.** When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interest, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

This rule probably establishes a trust. It identifies the trust res, i.e., the property in which both the lawyer and another person claim interests. This meets the first Kelley requirement. However, it spells out no fiduciary duties with respect to the property. See Kelley, 215 B.R. at 473 ("Simply restricting commingling of funds does not sufficiently define

---

[6] The Court will not address the question of whether these rules could even give rise to Plaintiffs' claims. "Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability." NMRA, Rules of Professional Conduct, Scope.

the fiduciary duty imposed here to bring the statute within § 523(a)(4)."); Holaday v. Seay (In re Seay), 215 B.R. 780, 788 (10th Cir. BAP 1997)(A general duty not to dispose of assets does not create the fiduciary duty to support § 523(a)(4)). Therefore, the Rule does not satisfy the second Kelley requirement. Finally, the Rule imposes no duty on a lawyer before he or she comes into property in which another claims an interest. It fails to meet the third Kelley requirement. Cf. Reilly v. Miano (In re Miano), 265 B.R. 352, 356 (Bankr. D. Ct. 2001)(The Connecticut Bar Association Formal Opinion 31 imposes a duty on an attorney to set aside the entire fee until co-counsel fee disputes are resolved. Bankruptcy Court held that any fiduciary duty that existed did so as a result of the debt and did not precede the debt, therefore Section 523(a)(4) was not implicated.)

    The Court finds that there was no fiduciary duty in this case. This conclusion is supported by all the cases found by the Court on this issue. Johnson v. Waldman (In re Waldman), 92 F.3d 546, 547 (7th Cir. 1996); Jeffrey M. Goldberg & Assoc., Ltd. v. Holstein (In re Holstein), 272 B.R. 463, 482 (Bankr. N.D. Ill. 2001); Miano, 265 B.R. at 355-56; Weisberger v. Guth (In re Guth), 210 B.R. 294, 297 (Bankr. N.D. Ohio 1997); Gore v. Kressner (In re Kressner), 206 B.R. 303, 312 (Bankr. S.D.

Page -16-

Case 04-01146-s    Doc 19    Filed 04/06/05    Entered 04/07/05 11:17:00 Page 17 of 19

N.Y. 1997). See also Canel and Hale, Ltd. v. Tobin, 304 Ill.App.3d 906, 917, 710 N.E.2d 861, 871, 238 Ill.Dec. 64, 74 (1999) (Attorney fee-share agreements do not create fiduciary duties.)

In summary, the Court finds that there was no fiduciary duty and that the Section 523(a)(4) claim should be dismissed.

4. **The 523(a)(4) embezzlement and larceny claims.**

The Court finds that the embezzlement and larceny claims should be dismissed. Central to each of these claims is the requirement that property of another is taken away. There is nothing in the record that shows that this was anything other than a contract dispute, or possibly a fraud claim.

5. **Defendants' affirmative defenses.**

Defendants raised three affirmative defenses. The Court finds that the first, laches, should be stricken. Plaintiffs filed this adversary before the 60 day limitation of Fed.R.Bankr.P. 4007(c). Defendants did not respond to Plaintiffs' arguments in the summary judgment papers that laches was inapplicable, or explain how they were damaged. See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835-36 (9th Cir.), cert. denied, 537 U.S. 1047 (2002).

The second and third affirmative defenses, res judicata and collateral estoppel, should also be stricken. See

generally Archer v. Warner, 538 U.S. 314 (2003). This Court can and should look behind the state court judgment, and the judgment made no specific findings relative to this matter.

Orders will enter.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

I hereby certify that on April 6, 2005, a true and correct copy of the foregoing was electronically transmitted, faxed, delivered, or mailed to the listed counsel and/or parties.

George D Giddens, Jr
10400 Academy Rd NE Ste 350
Albuquerque, NM 87111-1229

Gerald R Velarde
PO Box 2226
Albuquerque, NM 87103-2226

Denise Archuleta
10400 Academy Rd NE Ste 350
Albuquerque, NM 87111-7372

_James E. Burke_